UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :        19cv3436 (DLC)
MAHMOODA FAROOQI,                        :
                                         :        OPINION AND ORDER
                            Plaintiff,   :
                    -v-                   :
                                         :
NEW YORK DEPARTMENT OF EDUCATION;        :
KINSLEY KWATENG, individually; CLIVE     :
PRYCE, individually, and JOHN LACROIX,   :
individually,                            :
                                         :
                            Defendants.  :
                                         :
---------------------------------------- X

APPEARANCES:

For plaintiff:
Ambrose Wotorson, Jr.
Law Office of Ambrose Wotorson
225 Broadway, Fl. 41
New York, NY 10007

For defendants:
Jack Shaffer
City of New York Law Department
100 Church Street
New York, NY 10007

Shaina Wood
Corporation Counsel Office City of New York
100 Church Street
New York, NY 10007


DENISE COTE, District Judge:

     Mahmooda Farooqi ("Farooqi") sues the New York City

Department of Education ("DOE") and three administrators at the

Benjamin Banneker Academy for Community Development ("Benjamin

Banneker") in Brooklyn, New York for retaliation under the

Family and Medical Leave Act ("FMLA").  The defendants have moved for summary judgment.  For the reasons that follow, the defendants' motion is granted.

## Background

The following facts are undisputed or taken in the light most favorable to Farooqi unless otherwise noted.[1]  Farooqi was employed by the DOE beginning in 2001 and worked as a chemistry teacher at Benjamin Banneker from 2006 until 2018.

### I.   Farooqi's First FMLA Leave

On March 14, 2016, Farooqi submitted a request to the DOE for leave under the FMLA from March 15 through April 18 to care for her daughter.  The DOE approved Farooqi's request and her subsequent request to extend her FMLA leave through May 13.  Farooqi returned to work at Benjamin Banneker on or around May 14, 2016.

### II.  2016-2017 School Year

Farooqi continued to work as a chemistry teacher at Benjamin Banneker for the 2016-2017 school year.  On September

---

[1] In several instances in Farooqi's 56.1 statement, she admits to a fact but also objects based on Federal Rule of Evidence 403 with no further explanation.  This is insufficient to create an issue of material fact.  See Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 314 (2d Cir. 2008) ("An objection to the admissibility of a document is not the equivalent of a contention that the document's contents are untrue.")

15, 2016, "students in [Farooqi's] class were left on their own for a period of minutes while [Farooqi] used the restroom."[2]  Dr. Kingsley Kwateng ("Kwateng") witnessed this incident and outlined it in a disciplinary memorandum of September 20 which was placed in Farooqi's personnel file.  Defendant Kwateng became the interim acting Principal of Benjamin Banneker in February 2016 and was appointed as Principal for the 2016-2017 academic year.  Kwateng indirectly supervised Farooqi during the 2016-2017 and 2017-2018 school years.

Farooqi received performance reviews at the end of the 2016-2017 school year.  Teachers at Benjamin Banneker are evaluated based upon two categories: teacher performance and student learning.  Each of these is rated on a scale starting at "highly effective" and continuing through "effective," developing," and "ineffective."  At the end of each school year, the ratings for teacher performance and student learning are combined to create one overall rating.  Farooqi received a rating of "developing" for teacher performance, "effective" for student learning, and an overall rating of "effective" for the 2016-2017 school year.

---

[2] This fact was determined by a hearing arbitrator at a disciplinary hearing held pursuant to Education Law § 3020-a. Farooqi does not challenge the finding that she abandoned her classroom.

In June 2017, Kwateng sent Farooqi a letter informing her that the chemistry program at Benjamin Banneker would be discontinued.  Kwateng explained in his letter that he reached this decision after conducting an analysis of the chemistry program, speaking with a number of students and parents, and reviewing the program in the context of the science department at Benjamin Banneker and "as a fit for the school as a whole." At this time, Farooqi was the only chemistry teacher at Benjamin Banneker.  By early July 2017, however, the defendants had decided not to discontinue the chemistry program.

III. 2017-2018 Academic Year

On July 25, 2017, Farooqi requested FMLA leave from September 5 through November 30, 2017 to care for her daughter. The DOE approved her request.

While Farooqi was on FMLA leave, DOE assigned a substitute teacher from its Absent Teacher Reserve.  The substitute teacher taught elective forensics courses instead of chemistry courses. On December 1, 2017, Farooqi returned to work at Benjamin Banneker and took over the forensics classes until the end of the fall semester in January 2018.  She taught four forensics classes and one double-period chemistry class during the Spring semester.

On January 23, 2018, Farooqi approached Kwateng and another one of the defendants in the hallway and asked to leave work half an hour early.  At the time, Farooqi had just finished proctoring an exam and wished to attend a doctor's appointment for her daughter.  Farooqi testifies that after she asked to leave early, Kwateng "yelled and screamed," "created a scene," and would not let her leave early.  Farooqi stated to Kwateng, "you know my situation, you know my daughter."  Farooqi ultimately did not leave work early that day.

IV.   Section 3020-a Hearing

Between February 8 and February 26, 2018, five students complained that Farooqi made non-consensual physical contact with them during class.  The defendants opened an investigation into these allegations and held five conferences with Farooqi and her union representative to inform them of the allegations against her, provide her with the written statements of the students, and allow Farooqi to respond to the allegations.

On June 25, the DOE reassigned Farooqi to the Reassigned Staffing Team, effective September 4, 2018.  The DOE also advised Farooqi that all of her teaching responsibilities were suspended pending the resolution of the allegations against her.

On July 5, the DOE preferred eight charges against Farooqi. Five specifications charged that, over a several week period in

February 2018, Farooqi engaged in incidents of corporal

punishment or made unnecessary physical contact with at least

five students in her class.  Another specification charged

Farooqi with failure to supervise based on her absence from the

classroom on September 15, 2016.  The remaining two

specifications charged Farooqi with interfering with her

students' ability to participate and with their mental,

emotional, and physical wellbeing.  The DOE sought Farooqi's

termination from employment.

Over the course of twelve days between November 2018 and

February 2019, a hearing occurred in connection with these

specifications pursuant to Section 3020-a of the New York

Education Law.  See N.Y. Educ. Law § 3020-a.  Both parties were

represented by counsel and had an opportunity to offer evidence,

cross-examine witnesses, and make arguments in support of their

respective positions.

The arbitrator's March 19, 2019 Opinion and Award ("Award")

found Farooqi "guilty of one count of corporal punishment, one

charge of verbal abuse and one charge of failure to supervise."

The arbitrator imposed a fine of six thousand dollars and

ordered that Farooqi take a training course at the DOE's expense

about "keeping proper boundaries with students."  The arbitrator

dismissed the remaining charges.  Farooqi continues to perform

clerical work outside of the classroom, although she retains her title of chemistry teacher.

V.    Procedural History

Farooqi brought this action on April 17, 2019.  On April 25, Farooqi filed a first amended complaint ("FAC"), which alleged claims of age discrimination, malicious abuse of process, and stigma plus discrimination in violation of 42 U.S.C. § 1983; alienage and race discrimination in violation of 42 U.S.C. §§ 1981 and 1983; and retaliation under the FMLA, 29 U.S.C. § 2601 et seq.  An Opinion of April 9, 2020 dismissed all of Farooqi's claims except her claim of FMLA retaliation.  See Farooqi v. New York Dep't of Educ., No. 19CV3436 (DLC), 2020 WL 1809290 (S.D.N.Y. Apr. 9, 2020).  On November 18, the defendants filed a motion for summary judgment on the remaining claim.  The motion became fully submitted on February 9, 2021.

## Discussion

A motion for summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.  A fact is material if it might affect the outcome of the

suit under the governing law."  Frost v. New York City Police

Dep't, 980 F.3d 231, 242 (2d Cir. 2020) (citation omitted).  In

making this determination, the court "constru[es] the evidence

in the light most favorable to the nonmoving party and draw[s]

all reasonable inferences and resolv[es] all ambiguities in its

favor."  Jaffer v. Hirji, 887 F.3d 111, 114 (2d Cir. 2018)

(citation omitted).

"Where the moving party demonstrates the absence of a

genuine issue of material fact, the opposing party must come

forward with specific evidence demonstrating the existence of a

genuine dispute of material fact."  Robinson v. Concentra Health

Servs., Inc., 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).

The nonmoving party may rely neither "on conclusory statements",

CIT Bank N.A. v. Schiffman, 948 F.3d 529, 532 (2d Cir. 2020)

(citation omitted), nor on "mere speculation or conjecture as to

the true nature of the facts."  Fed. Trade Comm'n v. Moses, 913

F.3d 297, 305 (2d Cir. 2019) (citation omitted).

The FMLA entitles eligible employees with qualifying

reasons to twelve workweeks of unpaid leave during any

twelvemonth period.  29 U.S.C. § 2612(a)(1).  Qualifying reasons

include caring for a child of the employee, if such child "has a

serious health condition."  Id. § 2612(a)(1)(C).  It is

undisputed that Farooqi took FMLA leave to which she was
entitled.

Section 2615 of the FMLA states that "[i]t shall be
unlawful for any employer to interfere with, restrain, or deny
the exercise of or the attempt to exercise, any right provided
under [the FMLA]."  Id. § 2615(a)(1).  This section creates a
private right of action for an employee to seek both equitable
relief and money damages against an employer that interferes
with, restrains, or denies the exercise of FMLA rights.  Woods
v. START Treatment & Recovery Centers, Inc., 864 F.3d 158, 166
(2d Cir. 2017).  "FMLA claims come in at least two varieties:
interference and retaliation."  Id.  FMLA retaliation claims
"involve an employee actually exercising her rights or opposing
perceived unlawful conduct under the FMLA and then being
subjected to some adverse employment action by the employer."
Id.

FMLA retaliation claims are analyzed pursuant to the burden
shifting framework established in McDonnell Douglas Corp. v.
Green, 411 U.S. 792 (1973).  Graziadio v. Culinary Inst. of Am.,
817 F.3d 415, 429 (2d Cir. 2016).  To establish a prima facie
case of FMLA retaliation, a plaintiff must show that: "1) [s]he
exercised rights protected under the FMLA; 2) [s]he was
qualified for [her] position; 3) [s]he suffered an adverse

employment action; and 4) the adverse employment action occurred

under circumstances giving rise to an inference of retaliatory

intent." Id. (citation omitted).  Once a prima facie showing is

established, the burden shifts to the defendant to "demonstrate

a legitimate, non-discriminatory reason for its actions."

Graziadio, 817 F.3d at 429.  The burden then shifts back to the

plaintiff to demonstrate that the employer's reason was

pretextual or otherwise indicative of retaliatory intent.  Id.

An adverse employment action is any action by the employer

that is likely to "dissuade a reasonable worker" from exercising

her legal rights.  Shultz v. Congregation Shearith Israel of

City of New York, 867 F.3d 298, 309 (2d Cir. 2017) (citation

omitted).  See also Millea v. Metro-North R.R. Co., 658 F.3d

154, 164 (2d Cir. 2011) (applying Title VII retaliation standard

for adverse employment actions to FMLA retaliation claims).  The

adverse-action standard for retaliation is "broader than it is

in the context of discrimination."  Shultz, 867 F.3d at 309.

See also Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72,

90 (2d Cir. 2015).

With respect to adverse actions in the retaliation context,

the Supreme Court has cautioned that

> Context matters.  The real social impact of workplace
> behavior often depends on a constellation of
> surrounding circumstances, expectations, and
> relationships which are not fully captured by a simple

recitation of the words used or the physical acts
performed.  A schedule change in an employee's work
schedule may make little difference to many workers,
but may matter enormously to a young mother with
school-age children.  A supervisor's refusal to invite
an employee to lunch is normally trivial, a
nonactionable petty slight.  But to retaliate by
excluding an employee from a weekly training lunch
that contributes significantly to the employee's
professional advancement might well deter a reasonable
employee from complaining about discrimination.

Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 69

(2006) (citation omitted) (Title VII).

The Second Circuit has found an adverse employment action

where a high school teacher was denied tenure.  Donnelly v.

Greenburgh Cent. Sch. Dist. No. 7, 691 F.3d 134, 147 (2d Cir.

2012) (FMLA).  In the Title VII retaliation context, the Second

Circuit has found adverse employment actions where a plaintiff

was demoted, Littlejohn v. City of N.Y., 795 F.3d 297, 316 (2d

Cir. 2015), and where a high school teacher was assigned

notoriously absent students, suffered a temporary paycheck

reduction, was not notified that the curriculum for one of his

classes had changed, and received a negative performance

evaluation.  Vega, 801 F.3d at 91.  Additionally, "notice of

termination itself constitutes an adverse employment action,

even when the employer later rescinds the termination."  Shultz,

867 F.3d at 305-06 (Title VII and FMLA).  But "petty slights,

minor annoyances, and simple lack of good manners will not give

rise to actionable retaliation claims." Millea, 658 F.3d at 165

(Title VII and FMLA retaliation).

The plaintiff raises an inference of retaliatory intent if

she demonstrates that exercising her rights under the FMLA was

used as a "negative factor" in the defendant's employment

actions. Woods v. START Treatment & Recovery Centers, Inc., 864

F.3d 158, 169 (2d Cir. 2017) (citation omitted). The temporal

proximity of events may give rise to such an inference but is

insufficient by itself to defeat summary judgment at the pretext

stage. Bentley v. AutoZoners, LLC, 935 F.3d 76, 90 (2d Cir.

2019) (Title VII retaliation). See also Graziadio, 817 F.3d at

431 ("Temporal proximity, together with other evidence such as

inconsistent or implausible employer explanations, may defeat

summary judgment") (citation omitted). When an employer has

offered evidence of a legitimate, nonretaliatory reason for its

employment action, a plaintiff may defeat summary judgment

> by demonstrating weaknesses, implausibilities,
> inconsistencies, or contradictions in the employer's
> proffered legitimate, nonretaliatory reasons for its
> action. From such discrepancies, a reasonable juror
> could conclude that the explanations were a pretext
> for a prohibited reason.

Graziadio, 817 F.3d at 430 (citation omitted).

Farooqi alleges that the defendants retaliated against her

because she took two FMLA leaves and because she opposed the

defendants' illegal conduct during her verbal altercation with

Kwateng on January 23, 2018.  Farooqi has failed to present

sufficient evidence to raise a question of fact to support her

retaliation claim.

First, Farooqi has not presented evidence to proceed with

her claim that she engaged in protected activity during her

altercation with Kwateng on January 23.  Second, while she has

identified five actions that are sufficiently severe to qualify

as adverse employment actions, she has failed to offer evidence

linking those actions to either of her two FMLA leaves.[3]

1. January 23, 2018 Statements to Kwateng

Farooqi has not shown that her retaliation claim can rest

on her verbal dispute with Kwateng on January 23, 2018.

Although she asserted in her complaint that she told him that he

was yelling at her because of her requests in the past and on

that day to take FMLA leave, she has offered no evidence to

support that assertion or establish that she engaged in

protected activity on that day.[4]  The only evidence submitted by

---

[3] Two of Farooqi's alleged seven adverse employment actions --
having to teach forensics instead of chemistry and being yelled
at on January 23, 2018 -- do not constitute adverse employment
actions.  See Millea, 658 F.3d at 165.

[4] The FMLA retaliation claim asserts that the retaliation
occurred because she had availed herself of FMLA leave and
"otherwise opposed mistreatment that violated her rights under
the FMLA."  The alleged opposition to a violation of her FMLA

Farooqi regarding their dispute over her request on January 23 to leave early is her deposition testimony.[5]  Farooqi testified that she explained to Kwateng that she needed to leave early by saying, "you know my situation, you know my daughter."  When asked whether she accused Kwateng on January 23 of retaliating against her, Farooqi admitted: "I did not say anything to him. I did not say nothing to him.  I silently went to my room."

  2. September 20, 2016 Disciplinary Report

Farooqi took FMLA leave in the Spring of 2016, a leave which ended on May 13, 2016.  Farooqi alleges that Kwateng retaliated against her on September 20 for taking that leave by writing a disciplinary report based upon Farooqi leaving her students unattended in her classroom on September 15, 2016.

Farooqi has offered no evidence to support her retaliation claim.  Indeed, in opposing this motion, Farooqi concedes that she "does not challenge" the finding that she had abandoned her classroom.  She admits as well that she did not contest at the disciplinary hearing the charge that was based on the abandonment.  The Award found that "students in [Farooqi's] class were left on their own for a period of minutes while

---

rights is an apparent reference to the January 23, 2018 incident.

[5] Farooqi did not submit an affidavit in opposition to the motion for summary judgment.

[Farooqi] used the restroom."  It declined to impose sanctions since there was no evidence that Farooqi abandoned her students on any other occasion.  Farooqi having offered no evidence to raise a question of retaliatory intent, the defendants' motion is granted.

3.  Discontinuing the Chemistry Program in June 2017

Farooqi alleges that, again in retaliation for FMLA leave taken in the Spring of 2016, the defendants informed her in June 2017 that the chemistry program and, by extension her employment at Benjamin Banneker, would be terminated.  Farooqi has offered no evidence that this communication of the defendants' intent regarding which courses would be included in the curriculum for the next school year was motivated in whole or in part by Farooqi taking FMLA leave.  As of June 2017, over a year had passed since Farooqi's return from her FMLA leave.  Farooqi had not taken any FMLA leave during the 2016-2017 school year. Farooqi's speculation regarding the defendants' motives is insufficient to defeat their motion for summary judgment.

4.  Performance Review in June 2017

Farooqi next asserts that her June 2017 performance review was given in retaliation for the FMLA leave she took in the

15

Spring of 2016.[6]  Farooqi has offered no evidence to support that claim.  The review covered Farooqi's performance during a school year in which she did not take FMLA leave.  It was also given more than a year after she had returned to work following her FMLA leave.  Again, Farooqi's speculation regarding the motives behind the specific comments and grading in the review is insufficient to defeat the motion for summary judgment.

  5.  February 2018 Investigation

    Farooqi took FMLA leave for a second time in the Fall of 2017.  That leave ended on November 30, 2017.  Farooqi claims that the defendants retaliated against her when they initiated investigations of her use of corporal punishment.  Farooqi has not offered evidence to suggest that the defendants' evidence of their reasons for initiating their investigation was pretextual.

    It is undisputed that from February 8 through February 26, 2018, five different students in Farooqi's classes reported that Farooqi had made non-consensual physical contact with them during class.  As a result, the defendants have shown that they had a legitimate, non-retaliatory reason for initiating their investigation.

---

[6] It is assumed for purposes of this discussion that the performance review constituted an adverse action.  Although Farooqi received a "developing" rating for teacher performance, she received an overall rating of "effective."

In resisting summary judgment, Farooqi shifts her focus to the conduct of the investigation and asserts that the arbitrator concluded that she had been the subject of harassment.  Even if it were appropriate to look at the Award in connection with this claim, that would be of limited assistance to Farooqi.  After all, the arbitrator determined that Farooqi had engaged in inappropriate physical contact with a student and sanctioned Farooqi on one count of corporal punishment.  While the arbitrator noted as well that she was "inclined to credit" Farooqi's assertion that she was a target of harassment at the school, that statement in the Award did not suggest much less include a finding that any harassment was due to Farooqi taking FMLA leave.  And again, nothing in the Award can be read to suggest that the commencement of the investigation was ill-motivated.  The investigation was prompted by unsolicited student complaints and resulted in a finding a wrongdoing by the arbitrator.

6.  Assignment to Clerical Duties in September 2018

Finally, Farooqi claims that the defendants retaliated against her by reassigning her to perform clerical duties beginning in September 2018.  Farooqi has not offered evidence that this assignment can be attributed to her taking FMLA leave in the Fall of 2017 or earlier.  Farooqi has not offered

evidence to suggest that the defendants' stated reason for her change of duties -- the filing of disciplinary charges against her -- was pretextual.  There were significant intervening events between the FMLA leave and the reassignment some ten months later.  As just explained, student-initiated complaints about Farooqi led to an investigation and the filing of charges against her.  An Award upheld some of those charges.

## Conclusion

The defendants' November 18, 2020 motion for summary judgment is granted.  The Clerk of Court shall enter judgment for the defendants and close the case.


Dated:    New York, New York
          April 20, 2021



                                    _____
                                         DENISE COTE
                                  United States District Judge